The CINCINNATI GAS & ELECTRIC COMPANY and the Union Light, Heat and Power Company, Petitioners,

v.

FEDERAL POWER COMMISSION, Respondent.

No. 17228.

United States Court of Appeals
Sixth Circuit.

April 28, 1967.

---

3.  See Bogert, Trust & Trustees (2d ed.) § 471; Restatement of the Law of Property (1936) § 138.

Walter E. Beckjord, Cincinnati, Ohio (Douglas M. Mansfield, Peck, Shaffer & Williams, Cincinnati, Ohio, on the brief), for petitioners.

Israel Convisser, F. P. C., Washington, D. C. (Richard A. Solomon, Gen Counsel, Howard E. Wahrenbrock, Sol., Drexel D. Journey, Ernest Liebman, Attys., F. P. C., Washington, D. C., on the brief), for respondent.

Before WEICK, Chief Judge, PECK, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Chief Judge.

This proceeding is to review an order of Federal Power Commission, made under the authority of Section 201 of the Federal Power Act [1] requiring the peti-

tioners, The Cincinnati Gas & Electric Company (CG&E) and its affiliate, The Union Light, Heat and Power Company, to file and maintain on file with the Commission rate schedules covering their wholesale sales.[2]

The petitioners resisted jurisdiction of the Commission to make the order, claiming that, within the meaning of the Act, their wholesale sales did not involve the delivery to their customers of electrical energy generated out of the state, and in any event the sales were made from local distribution facilities and were therefore exempt under Section 201(b) of the Act.

A hearing was held before the Presiding Examiner of the Commission and evidence, including expert testimony, was offered by both the Commission and the petitioners.

The hearing consumed about fifteen days and the case was submitted to the Presiding Examiner on the evidence, oral arguments and briefs. The Presiding Examiner gave careful consideration to the case and handed down his Initial Decision, in which he adopted findings of fact and conclusions of law. His decision appears in twenty-nine pages of the record.

The Presiding Examiner found as a fact:

"(10) At times each of the wholesale customers named above in (4) and (5) receives out-of-state electric energy from the multi-state power network of which the Cincinnati system is a part, such energy having been commingled with the Cincinnati system energy.

"(11) The integrated and coordinated Cincinnati interstate electric system and the systems with which it is interconnected and operating in synchronism form an integrated and operating power

---

1. 16 U.S.C. § 824.

2. Petitioners admitted that three of CG&E's wholesale customers received out

of state energy, but contended that evidence does not support the holding that eight others received such energy.

pool, and the sales of electric energy by the Cincinnati system to its wholesale customers named above in (4) and (5) are pool sales and by reason of the interstate nature of the pool are sales in interstate commerce."

He also found that the facilities from which the energy is delivered to CG&E's wholesale customers, were at least in part constructed and used to sell and interchange energy with other companies and are not used solely in local distribution. He further held that interstate wholesale sales are not exempt from jurisdiction of the Commission.

The Commission adopted the Presiding Examiner's Initial Decision in all material respects and ordered the filing of the rates.

It was conceded by petitioners that they are public utilities within the meaning of the Act.

CG&E and its wholly owned subsidiaries are a part of a coordinated and interconnected electric system serving a highly industrialized area of 2600 square miles in nine counties in southwestern Ohio, five counties in northern Kentucky, and one county in eastern Indiana. CG&E owns and operates three electric generating stations which are interconnected by transmission lines through Ohio and Kentucky. The system is connected with eight other utility companies in Ohio, Indiana and Kentucky. These other companies in turn are connected with other utilities which constitute the American Electric Power System.

All of these companies are part of the Interconnected Systems Group consisting of one hundred forty utility systems, in thirty-two states. The System forms a pool of multi-state energy which supplies the load of CG&E in synchronism with the other connected utilities. CG&E thus utilizes out of state energy as well as energy generated by it, to fulfill its requirements. In turn, energy generated

by CG&E flows through the system, out of the state, and is used by other utilities.[3]

Staff witness Miller testified that each of the wholesale customers in question received out of state energy commingled with Ohio energy. Staff witness Dr. Jessel testified that in an interconnected pool operation, interstate energy was delivered to each of CG&E's wholesale customers.

■ Petitioners' claim was that the evidence was not sufficient to identify out of state energy as being delivered to the wholesale customers; that all units of electricity are identical and it is impossible to identify one unit from another; that the burden was upon the Commission to show the actual source of the specific units delivered to the wholesale customers, and it was scientifically impossible to do so.

There can be no question but that interstate as well as intrastate generated electricity was commingled and was flowing through the CG&E system. This is enough to sustain the Commission's jurisdiction.

It would indeed be impossible to prove the source of electrical current supplied from a pool. It was not necessary for the Commission to do so.

As well stated by the Court in Pennsylvania Water & Power Co. v. F. P. C., 89 U.S.App.D.C. 235, 193 F.2d 230, at 241 (1951) aff'd 343 U.S. 414, 72 S.Ct. 843, 96 L.Ed. 1042 (1952):

"Each sale is in effect a pool sale drawn from the integrated system and hence interstate in nature."

See also United States v. Public Util. Comm'n of Cal., 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020 (1953).

Other Appellate Courts have rejected similar contentions. Indiana & Mich. Elec. Co. v. F. P. C., 365 F.2d 180 (7th Cir. 1966), cert. denied 385 U.S. 972, 87 S.Ct. 509, (1966); Public Service Co. of Ind., Inc. v. F. P. C., 375 F.2d 100 (7th

---

3. In 1963 CG&E system received 11% of its total net generation from out of state, of which 9% was from Indiana sources.

Cir. 1967) ; Arkansas Power & Light Co. v. F. P. C., 368 F.2d 376 (8th Cir. 1966).

■ We are satisfied that the distribution facilities of CG&E were not used solely in intrastate distribution and that the exemption was not available to it with respect to its wholesale sales. Indiana & Mich. Elec. Co. v. F. P. C., supra; Wisconsin-Mich. Power Co. v. F. P. C., 197 F.2d 472 (7th Cir. 1952) cert. denied 345 U.S. 934, 73 S.Ct. 794, 97 L. Ed. 1362 (1953).

In our opinion, the findings of fact of the Commission are supported by substantial evidence and are binding on us.

Affirmed.