**UNITED STATES of America**

**v.**

**Jerome J. LITVIN and District Grocery Stores, Inc.**

**Crim. No. 1928–72.**

United States District Court, District of Columbia, Criminal Division.

Feb. 6, 1973.

Harold H. Titus, Jr., U. S. Atty., District of Columbia, Lester B. Seidel, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Jo V. Morgan, Frank H. Strickler, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

FLANNERY, District Judge.

The defendants in this case are charged pursuant to 21 U.S.C. § 331(k) (1970) of the Food, Drug and Cosmetic Act which prohibits "[t]he alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded." Specifically, the defendants were indicted for holding for sale various foodstuffs including baby food, cake mixes, rice nuggets, and corn meal which had been exposed to and contained rodent excreta and hairs. During a routine follow-up inspection of defendants' warehouse in February, 1972, these foodstuffs were seized by inspectors from the Food and Drug Administration pursuant to 21 U.S.C. § 374 (1970). As required by statute, the inspectors presented to the defendant Litvin their credentials and a notice of inspection which contained a reprint of § 374. They asked the defendant's permission to inspect the warehouse and conducted an inspection lasting several days as a result of which samples of various foodstuffs were seized. The inspectors had no search warrant. The defendant alleged that he did not consent to the inspection and moves to suppress the use of the foodstuffs as evidence contending that the warrantless search and seizure carried out by the Food and Drug Administration inspectors violated the fourth amendment.

The issues raised by the warrantless seizure of property by inspectors from administrative regulatory agencies have been reviewed by the Supreme Court in four recent cases. In Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Court held that code enforcement administrative searches by municipal health and safety inspectors constitutes significant intrusions upon interests protected by the fourth amendment thereby necessitating the issuance of a search warrant before such searches are conducted absent con-

sent. Unlike *Camara*, in See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the object of the administrative search was a business establishment rather than a private dwelling. Consistent with their position in *Camara*, the Court concluded that "administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." *Id.* at 545, 87 S.Ct. at 1740.

Three years later in Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), the Court confronted a similar issue involving the Internal Revenue Service's unconsented to, warrantless, and forcible inspection of a business establishment which possessed a liquor license. A member of the Internal Revenue Service's Alcohol and Tobacco Tax Division had been a guest at a party on the premises of the petitioner's catering establishment and had noted a possible violation of the federal excise tax law. When federal agents later visited the premises and asked for entry to a locked liquor storeroom, the petitioner asked if the agents had a search warrant. They replied that they had no warrant. The petitioner continued to refuse entry and the agents broke the lock, entered and found bottles of liquor which they suspected of being refilled contrary to law. The Court emphasized the historically broad power of Congress to "design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand." *Id.* at 76, 90 S.Ct. at 777. Thus, they found that the fourth amendment's requirement of reasonableness had been satisfied by the peculiar nature of the object of the search—a liquor establishment. The historically conceded power of government to scrutinize intensely all facets of the manufacture, transport and sale of alcoholic beverages rendered the actions taken by the Internal Revenue Service inspectors reasonable under the fourth amendment.

However, noting that Congress has broad authority to fashion standards of reasonableness for searches and seizures and that Congress had done so in regard to Internal Revenue Service inspection of retail liquor establishments, the Court reasoned that since Congress had structured a standard that did not include forcible entries without a warrant and instead had imposed a fine on a licensee who refused admission to the inspector, the imposition of the fine was an exclusive sanction, and the inspectors could not break and enter the locked storeroom without a warrant. The Court stated:

"Under the existing statutes, Congress selected a standard that does not include forcible entries without a warrant. It resolved the issue, not by authorizing forcible, warrantless entries, but by making it an offense for a licensee to refuse admission to the inspector."

397 U.S. at 77, 90 S.Ct. at 777. Therefore, although a warrantless search could qualify under the fourth amendment due to the historically accepted governmental regulatory interest in liquor, the Government, by omitting authorized force in its inspection statute, had imposed a stricter standard on themselves, a standard which they failed to meet.

In the Spring of 1972, the Supreme Court through Mr. Justice White, the author of the *Camara* and *See* opinions, enunciated its latest views on the subject of warrantless administrative searches. See United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). The Court found that the warrantless search of a gun dealer's locked storeroom during business hours as part of the inspection procedure authorized by the Gun Control Act of 1968, 18 U.S.C. § 921 et seq. (1970), did not violate the fourth amendment. The defendant in *Biswell*, a pawn shop owner federally licensed to deal in sporting weapons, was visited by a federal Treasury agent who identified himself, inspected the defendant's books, and requested entry into a locked gun store-

room. The defendant at first refused entry without a warrant, but when the agent presented him with a copy of 18 U.S.C. § 923(g) (1970), which authorized such inspections, he replied "Well, thats what it says so I guess its OK." Biswell unlocked the storeroom, and the agent found and seized two sawed-off shotguns.

The Court distinguished *See* by pointing out that they had no occasion in that case to consider the scope of the fourth amendment with respect to various federal regulatory statutes. They distinguished *Colonnade,* finding that although the object of the search and seizure in both *Biswell* and *Colonnade* was a "pervasively regulated business" where licenses were mandatory, 406 U.S. at 316, 92 S.Ct. 1593, in *Biswell* unlike *Colonnade,* the search was not accompanied by any unauthorized force. Thus, the Court concluded in *Biswell* that where (1) regulatory inspections further urgent interests and (2) the possibilities of abuse and the threat to privacy are not of impressive dimensions, then the inspection may proceed without a warrant where specifically authorized by statute.

Both *Colonnade* and *Biswell* involved searches of licensed business establishments. The inspection statute in *Colonnade* is strikingly similar to the inspection statute in *Biswell.* In *Colonnade* the inspection statute provides:

"The Secretary or his delegate may enter during business hours the premises . . . of any dealer for the purpose of inspecting or examining any records or other documents required to be kept . . . under this chapter . . . and any distilled spirits, wines, or beer kept or stored by such dealer on such premises."

26 U.S.C. §§ 5146(b), 7606 (1970). The sanction provision states:

"Any owner of any building or place, or person having the agency or superintendence of the same, who refuses to admit any officer or employee of the Treasury Department acting under the authority [of this chapter] or refuses to permit him to examine such article or articles, shall, for every such refusal, forfeit $500."

*Id.* § 7342. The inspection statute in *Biswell* reads:

The Secretary may enter during business hours the premises (including places of storage) of any firearms or ammunition . . . dealer . . . for the purpose of inspecting or examining (1) any records or documents required to be kept . . . and (2) any firearms or ammunition kept or stored by such . . . dealer."

18 U.S.C. § 923(g) (1970). Although there is, of course, a general penalty statute which provides sanctions up to ten years imprisonment and $10,000 in fines for violations of the Gun Control Act, refusing entry to inspectors is not listed as a violation. 18 U.S.C. § 924 (1970).

The inspection statute in the case at bar is similar to the *Colonnade* and *Biswell* inspection statutes. Although the defendants in the present case are not licensed, as was the case in *Colonnade* and *Biswell,* the defendants' business nevertheless is subject to the comprehensive, vigorously enforced regulations of the Food and Drug Administration. This fact, when considered with the extreme importance of these regulations to public health, places the defendants' business within the same category of highly-scrutinized endeavors which justifiably includes both the liquor and firearm industries. See United States v. Del Campo Baking Manufacturing Co., 345 F. Supp. 1371, 1377 (D.Del.1972). In pertinent part the applicable Food and Drug Administration inspection statute reads:

"[O]fficers or employees duly designated by the Secretary, upon presenting appropriate credentials and a written notice to the owner, operator, or agent in charge, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in

which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce . . .; and (2) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials; containers and labeling therein."

21 U.S.C. § 374(a) (1970).

The refusal to permit entry or inspection as authorized by § 374 results in one-year imprisonment, a $1000 fine, or both. 21 U.S.C. §§ 331(f), 333(a) (1970). Thus, the statutes authorizing administrative inspections for both the alcoholic beverage business and those businesses falling within the jurisdiction of the Food and Drug Administration include a specific sanction for refusing entry to agency inspectors. Therefore, the statutory framework relevant in the case at bar is dissimilar to the *Biswell* statutes, and more closely resembles the statutory structure underlying the *Colonnade* decision. See United States v. Kramer Grocery Co., 418 F.2d 987, 988 n. 1 (8th Cir. 1969).

Moreover, the legislative history of the Food and Drug Administration inspection statute, § 923(g), squares this case with *Colonnade*. In the Senate report accompanying the Food, Drug and Cosmetic Act inspection provision, the Committee on Labor and Public Welfare emphasized the need for inspections to which the subject may not voluntarily agree. See United States v. Del Campo Baking Manufacturing Co., 345 F.Supp. at 1376 n. 12. However, the report went on to state:

"This legislation does not propose that food and drug inspectors shall have the power of arrest, or the power to use force in order to gain admission to a factory or otherwise carry out an intended inspection. . . . [t]he bill authorizes entry and inspection but does not authorize the inspector to enter the establishment by force. The owner is on notice, however, that he must permit a reasonable inspection. If he refuses such an inspection he is in violation of the act."

Senate Report No. 712, July 29, 1953, accompanying H.R. 5740, 1953 U.S. Code, Congressional And Administrative News, Vol. 2, pp. 2198–2201.

In *Colonnade,* the Court suppressed the evidence saying that although the search was reasonable, under the existing statutes, Congress selected a standard that did not include forcible entry without a warrant. Instead, Congress resolved the issue not by authorizing forcible, warrantless entries, but by making it an offense for a licensee to refuse entry to the inspector. 397 U.S. at 77, 90 S.Ct. 774.

The Supreme Court in *Biswell* described its decision in *Colonnade*. "We found, however, that Congress had not expressly provided for forcible entry in the absence of a warrant and had *instead* given Government agents a remedy by making it a criminal offense to refuse admission to the inspectors under 26 U.S.C. § 7342." [emphasis added.] 406 U.S. at 314, 92 S.Ct. at 1595. In *Biswell*, although there is a general penalty provision in the Gun Control Act which applies to the whole chapter, it is unlikely that this penalty clause would be applied to a businessman refusing entry to inspectors, solely for the "crime" of refusing entry to those inspectors. 18 U.S.C. § 924 (1970). Therefore, whereas consent was not an issue in *Biswell* because the authority of the statute had the force of a warrant and the refusal of the businessman in and of itself was not a specified crime, in *Colonnade* consent had to be an issue because the defendants' denial of consent subjected him to criminal sanction pursuant to a specific penalty provision regardless of anything the inspectors might have discovered as a result of the inspection. The Court decided that by refusing entry to the inspectors and submitting himself to a specified criminal sanction,

the defendant precluded those inspectors from carrying out their search, and the evidence was suppressed. In short, the difference between *Colonnade* and *Biswell* is the presence of the specific statutory entry-refusal sanction in *Colonnade*. Because such a statutory provision also exists in the case at bar in the form of 21 U.S.C. § 331(f) (1970), it is this court's view that the case at bar more resembles *Colonnade* than *Biswell*. *Contra,* United States v. Del Campo Baking Manufacturing Co., 345 F.Supp. 1371 (D.Del.1972). In fact, the present case is actually stronger than *Colonnade* because unlike *Colonnade,* the penalty for refusing entry is exactly the same as the penalty for any violations discovered as a result of the search—one-year imprisonment and/or $1000 fine. In *Colonnade* the penalty for refilling liquor bottles was $1000 fine and/or one-year imprisonment while the penalty for refusing entry was simply a $500 fine. 26 U.S.C. §§ 5605, 7342 (1970). See dissenting opinion of Chief Justice Burger in *Colonnade*, 397 U.S. at 79, 90 S.Ct. 774.

■ Thus, the issue of consent is crucial to the case at bar, for if the defendant consented to the inspection, the seized items should not be suppressed and the defendants' charges under § 331(k) should stand. However, if defendant did not consent to the inspection, although the items would be suppressed, he would still be in violation of § 331(f). This section renders unlawful "the refusal to permit entry or inspection as authorized by section 374 of this title." The language of this provision makes clear that although the defendant has the power to refuse entry, such refusal will subject him to the same penalty he would receive as a result of any evidence seized during a search of his premises. In light of this legislative history cited above, such an interpreta-

tion appears to be the intention of Congress. Therefore, as in *Colonnade,* if defendant refused entry to the Food and Drug Administration inspectors he was in violation of § 331(f) and subject to one-year imprisonment and/or $1000 fine. But if defendant refused entry, the inspectors had no right to enter the storeroom, and following *Colonnade,* any evidence seized as a result of the search must be suppressed.

■ The court, after reviewing the lengthy testimony of both the Food and Drug Administration inspector and defendant Litvin, concludes that Litvin did openly and voluntarily consent to the inspection. See United States v. Lewis, 431 F.2d 303 (9th Cir. 1970); United States v. Thriftimart, 429 F.2d 1006 (9th Cir. 1970); United States v. Hammond Milling Co., 413 F.2d 608 (5th Cir. 1970). Not only was no force employed, but unlike *Biswell,* there was no hint that Litvin was intimidated into granting consent by any official. He had received various inspectors on a monthly basis, was cordial to the Food and Drug Administration inspectors, had put an assistant at the inspectors' disposal, and openly allowed them free rein while on his premises. At no time did he ask the inspectors to stop and at no time did he ask that his attorney be present. Moreover, the inspector pointed out that upon refusal for entry it was standard procedure for Food and Drug Administration inspectors to return to their superiors rather than press the issue. Therefore, because the court finds that the Government has met its burden in demonstrating that defendant Litvin voluntarily consented to an inspection of his premises, and in light of the Supreme Court's decisions in *Colonnade* and *Biswell,* it is this 6th day of February, 1973,

Ordered that defendants' motion to suppress evidence and for return of property be and hereby is denied.