**The YOUGHIOGHENY AND OHIO COAL COMPANY, Plaintiff,**

v.

**Rogers C. B. MORTON, Secretary of the Interior, et al., Defendants.**

Civ. No. 72–78.

United States District Court,
S. D. Ohio, E. D.
Sept. 19, 1973.

John C. Kinder, St. Clairsville, Ohio, for plaintiff.

Peter Berkfield, Dept. of Justice, L. Avrum Fingerett, Div. of Mine Health, Dept. of the Interior, Washington, D. C., for defendants.

Before PECK, Circuit Judge, and KINNEARY and RUBIN, District Judges.

## OPINION

CARL B. RUBIN, District Judge.

This matter is before the Court on a motion for interlocutory injunction against the enforcement of those parts of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 et seq., [hereinafter the Act] which direct and require the Secretary of the Interior and his authorized representatives to make warrantless searches of coal mines. See 30 U.S.C. §§ 813(a), (b)(1), 814(b), (c)(1), 819(a)(1), (b), (c). A three judge court was convened in accordance with the provisions of 28 U.S.C. § 2284 to hear argument on the constitutionality of these provisions.

Jurisdiction is asserted under the provisions of 28 U.S.C. §§ 1331, 1343(4), and 1361. Venue is proper under the provisions of 28 U.S.C. § 1391. The claim for relief is alleged under the provisions of the Fourth Amendment to the Constitution of the United States.

The parties have entered a joint stipulation of facts which are not in dispute. Oral argument was held before the three judge panel on May 14, 1973. From these undertakings the following facts are now undisputed:

Plaintiff owns and operates three deep, underground coal mines in Ohio: "Nelms No. 2" and "Allison." The coal recovered from plaintiff's operations is shipped interstate commerce. Plaintiff is therefore subject to regulation under the Federal Coal Mine Health and Safety Act of 1969.

Federal coal mine inspectors employed by the United States Bureau of Mines make unannounced, warrantless inspections at plaintiff's mines. These inspections include examinations of plaintiff's maps, books, and records which are required by provisions of the Act and inspection of the underground mine facilities. Plaintiff's employees are permitted, but not required, to accompany the inspectors on their investigations.

Plaintiff has received notice of approximately 1,000 alleged violations which are the subject of proposed orders of assessment under the Act. Federal coal mine inspectors visited plaintiff's three mines a total of 465 out of 715 working days during the period January 1, 1972 to December 31, 1973. The mines encompass a total area of 343.3 miles, including 23.3 miles of track.

The coal mine industry has been regulated since 1910 when the United States Bureau of Mines was established. In 1941 federal inspectors were first given the power to enter and inspect mines for health and safety hazards. However, full compliance with health and safety standards was not attained. Mining disasters in 1967 and 1968 led Congress to enact the comprehensive Federal Coal Mine Health and Safety Act of 1969. 1969 U.S.Code Cong. & Admin.News 2503. The Act contains the following relevant Congressional findings and declarations:

(a) the first priority and concern of all in the coal mining industry must be the health and safety of its most precious resource—the miner;

(b) deaths and serious injuries from unsafe and unhealthful conditions and practices in the coal mines causes grief and suffering to the miners and to their families;

(c) there is an urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal mines in order to prevent death and serious physical harm, and in order to prevent occupational diseases originating in such mines;

(d) the existence of unsafe and unhealthful conditions and practices in the Nation's coal mines is a serious impediment to the future growth of the coal mining industry and cannot be tolerated;

(e) the operators of such mines with the assistance of the miners have the primary responsibility to prevent the existence of such conditions and practices in such mines;

(f) the disruption of production and the loss of income to operators and miners as a result of coal mine accidents or occupationally caused diseases unduly impedes and burdens commerce; and

(g) it is the purpose of this chapter . . . (2) to require that each operator of a coal mine and every miner in such mine comply with [mandatory health and safety] standards . . .

The Act empowered the Secretary of the Interior to develop, promulgate and revise mandatory safety standards and to promulgate health standards for coal mines. 30 U.S.C. § 811. To implement

the mandatory health and safety standards the Act requires frequent mine inspections without advance notice. Underground coal mines must be inspected at least four times a year. 30 U.S.C. § 813.[1] When a federal inspector finds a violation of any mandatory health or safety standard he is required to issue a notice of violation. 30 U.S.C. § 819(a)(1). Willful violations of mandatory health or safety standards are criminally punishable. 30 U.S.C. § 819(b). With this as background, we must now test the Act against the rights guaranteed by the Fourth Amendment.

■■ There can be no question but that the right of government officials to enter privately owned mining property without notice or warrant constitutes a search within the meaning of the Fourth Amendment.[2] See Cady v. Dombrowski, 413 U.S. 433 at 442, 93 S.Ct. 2523, 37 L. Ed.2d 706 (1973). We further recognize that warrantless searches conducted without prior judicial approval are *per se* unreasonable under the Fourth Amendment, subject only to a few jealously limited and carefully guarded exceptions. See Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). It has been recently underscored that "the Fourth Amendment's prohibition against 'unreasonable searches and seizures' is shaped by the

---

1. Section 813 provides, in relevant part:
 § 813. Inspections and investigations—Purposes.
 (a) Authorized representatives of the Secretary shall make frequent inspections and investigations in coal mines each year for the purpose of (1) obtaining, utilizing, and disseminating information relating to health and safety conditions, the causes of accidents and the causes of diseases and physical impairments originating in such mines, (2) gathering information with respect to mandatory health or safety standards, (3) determining whether an imminent danger exists, and (4) determining whether or not there is compliance with the mandatory health or safety standards or with any notice, order, or decision issued under this subchapter. In carrying out the requirements of ·clauses (3) and (4) of this subsection, no advance notice of an inspection shall be provided to any person. In carrying out the requirements of clauses (3) and (4) of this subsection in each underground coal mine, such representatives shall make inspections of the entire mine at least four times a year.
 *Right of entry of investigators*
 (b)(1) For the purpose of making . any inspection or investigation under this chapter, the Secretary or any authorized representative of the Secretary shall have a right of entry to, upon, or through any coal mine.
 (2) For the purpose of developing improved mandatory health standards, the Secretary of Health, Education, and Welfare or his authorized representative shall have a right of entry to, upon, or through, any coal mine.
 (3) The provisions of this chapter relating to investigations and records shall be available to the Secretary of Health, Education, and Welfare to enable him to carry out his functions and responsibilities under this chapter.
 *Accompaniment right of representative of miners*
 (h) At the commencement of any inspection of a coal mine by an authorized representative of the Secretary, the authorized representative of the miners at the mine at the time of such inspection shall be given an opportunity to accompany the authorized representative of the Secretary on such inspection.
 *Hazardous conditions; spot inspections*
 (i) Whenever the Secretary finds that a mine liberates excessive quantities of methane or other explosive gases during its operations, or that a methane or other gas ignition or explosion has occurred in such mine which resulted in death or serious injury at any time during the previous five years, or that there exists in such mine other especially hazardous conditions, he shall provide a minimum of one spot inspection by his authorized representative of all or part of such mine during every five working days at irregular intervals.

2. The Fourth Amendment to the United States Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

warrant clause, and thus that a warrantless search of private property is *per se* 'unreasonable' under the Fourth Amendment unless within one of the few specifically established and well delineated exceptions." Cady v. Dombrowski, *supra,* 413 U.S., at 451, 93 S.Ct., at 2532 (Brennan, J., *dissenting*); also see Almeida-Sanchez v. United States, *supra,* 413 U.S., at 269, 93 S.Ct. 2535; *Id.,* at 277, 93 S.Ct. 2535 (Powell, J., *concurring*); United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Camera v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

■ We consider it equally well settled that the private commercial property of a businessman or corporation is, in general, protected by the Fourth Amendment. See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). The Court would not be candid, however, if it failed to recognize that Fourth Amendment rights have been considerably restricted as they apply to commercial property affected by certain validly enacted regulatory schemes. For example, an exception to the warrants requirement is now established where statutory regulation of businesses, pursuant to the government's police power, mandates warrantless entry. See United States v. Biswell, 406 U.S. 311, 315–317, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); Colonnade Catering Corporation v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

No violation of Fourth Amendment rights is deemed to occur in these and analogous situations because, as the Court has recently observed, businessmen ". . . engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade . . .. The businessman in a regulated industry in effect consents to the restrictions placed upon him." Almeida-Sanchez v. United States, *supra,* 413 U.S., at 271, 93 S.Ct., at 2538; also see Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); United States v. Thriftimart, 429 F.2d 1006 (C.A.9, 1970), cert. den., 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 185 (1971), reh. den., 400 U.S. 1002, 91 S.Ct. 453, 27 L.Ed.2d 454 (1971); United States v. Del Campo Baking Manufacturing Co., 345 F.Supp. 1371 (D.Del.1972); United States v. Litvin, 353 F.Supp. 1333 (D.D.C.1973).

Plaintiff does not, of course, argue that the coal industry is not a "regulated" one within the meaning of *Almeida-Sanchez.* Nor do we understand the plaintiff to contest the historicity of such regulation under the standard of *Colonnade,* where the Court noted that the liquor industry has ". . . long [been] subject to close [governmental] supervision and inspection." *Id.,* 397 U.S., at 77, 90 S.Ct., at 777. Also see LaRue v. California, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1973). We believe the same is equally true of the coal industry which, as noted above, has long been held subject to the Congress' powers under the Commerce Clause.[3] It

---

**3.** See, The Bituminous Coal Act of 1937, 50 Stat. 75–90, 15 U.S.C. § 828 et seq. (expired 1943); Coal Mine Safety Act of 1941, 55 Stat. 177, 30 U.S.C. § 451 et seq. (repealed by 83 Stat. 803, December 30, 1969, and replaced by the Act which is the subject matter of the present litigation); Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301 (1941); Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); City of Atlanta v. National Bituminous Coal Commission, 26 F.Supp. 606 (D.D.C.1939), aff'd, 308 U.S. 517, 60 S.Ct. 170, 84 L.Ed. 440 (1939); St. Mary's Sewer Pipe Company v. Bureau of Mines, 262 F.2d 378 (C.A.3 1959), collecting cases; also see, Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed. 2d 258 (1964); N.L.R.B. v. Good Coal Co., 110 F.2d 501 (C.A.6 1940), cert. den., 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400 (1940); N.L.R.B. v. Louisville Refining Co., 102 F.2d 678 (C.A.6 1939), cert. den., 308 U.S. 568, 60 S.Ct. 81, 84 L.Ed. 477 (1939); Cincinnati Gas & Electric Co. v. Federal Power Commission, 376 F.2d 506 (C.A.6

would appear then that plaintiff at bar, a business in a pervasively regulated industry, has consented by implication at least, to reasonable intrusions by federal authorities.

■ The touchstone against which the instant legislative scheme must be tested is whether warrantless searches, in the context of mine safety investigations, are reasonable. As the Supreme Court has quite recently had the occasion to observe, the Fourth Amendment proscription against "'unreasonable [searches and] seizures' . . . must not be read in a vacuum. A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material." Roaden v. Kentucky, 413 U.S. 496 at 501, 93 S.Ct. 2796, at 2800, 37 L.Ed.2d 757 (1973). In *Roaden* the Court held that the seizure of an allegedly obscene motion picture, in the absence of a valid search warrant, was pregnant with First Amendment implications and therefore was unreasonable and unconstitutional under the Fourth and Fourteenth Amendments.[4]

To answer this inquiry regarding reasonableness, the Court must consider, among other factors, whether the government has a valid and important interest in the area; whether resort to a judicial officer for a warrant would tend to frustrate the attainment of the regulatory ends of the statutory scheme; Whether the owners of these premises have a reasonable expectation of privacy in them; and whether a grave danger of abuse is created by the allowance of warrantless entry. These queries need not detain us long.

■ It is obvious that large governmental interests are at stake in the regulation of coal mines. The health, safety and the very lives of coal miners are jeopardized when mandatory health and safety laws are violated. Congress had reason to believe that past regulatory experience compelled a more comprehensive statutory scheme which depends, for its successful implementation, upon frequent, unannounced inspections. Granting the assumptions of this approach, Congress may have had cause to conclude that resort to a judicial officer, prior to every inspection, could tend to frustrate its legislative purpose.

■ Nor do we think that there is any merit in the plaintiff's argument that the challenged portions of the Act interfere with any reasonable expectations of privacy it may have in its mines. Mine employees, whose interests are protected by the Act, enter such mines daily. They there perform work which is important to this nation's seemingly insatiable demands for energy. In essence then, the plaintiff's mines are open to representatives of the public and

---

1967), cert. den. 389 U.S. 842, 88 S.Ct. 77, 19 L.Ed.2d 106 (1967); see, *contra*, Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1930) striking down as unconstitutional provision of The Bituminous Coal Conservation Act of 1935, 49 Stat. 991, 15 U.S.C. § 801 et seq.

4. The Court must, of course, assume in the context of a facial attack on the constitutionality of the Act that the searches conducted by the federal mining inspectors are directly related to ensuring compliance with the purpose of the legislation. We do not believe that the inspectors could validly use the powers granted them by Sections 813(a) and (b) to conduct a search of plaintiff's premises for the express purpose of finding illegal drugs, or adulterated food or fraudulently prepared income tax returns. Under this Act, and other legislative schemes which are similar to it, see for example, the Federal Food and Drug and Cosmetic Act of 1938, § 201, 21 U.S.C. § 374(a) (as amended 1962); United States v. Del Campo Baking Manufacturing Co., *supra*; United States v. Lewis, 431 F.2d 303 (9th Cir. 1970); Internal Revenue Code of 1954, § 7602, 26 U.S.C. § 7602; Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the inspectors' powers are valid only insofar as they are used to further the purposes of the Act. To the extent a given search does not satisfy this standard, a necessary predicate to its validity would be lacking and it would be plainly improper under settled Fourth Amendment law. See Coolidge v. New Hampshire, *supra*, 403 U.S. at 473–474, 91 S.Ct. 2022, 29 L.Ed.2d 564.

the public has every right to ensure that the working conditions of these same mines meet certain safety standards. It might be said that the plaintiff waives any rights to privacy it may otherwise have in these facilities by operating a business which requires the daily labor of large numbers of miners, who have understandably been characterized by Congress as the "most precious resource" of the coal industry. See, Congressional Finding (a) *supra* at 3. Federal inspectors do not, therefore, intrude into any zone of privacy which the mine owners reasonably expect to remain inviolate. The governmental interest in promoting mine safety, it might be concluded, far outweighs any interest the mine operators may have in privacy.[5]

We further conclude that there is but minimal danger of any abuse of power flowing from the Act's authorization of warrantless entry. In Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Court noted the important function a judicial officer plays in delimiting the scope of a search:

Under the present system [of unannounced warrantless entries of housing code inspector], when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the

inspector himself is acting under proper authorization.

*Id.*, at 532, 87 S.Ct., at 1732. The gun licensees were found not to be so handicapped in *Biswell*.[6]

We find that the mining operators at bar have no such misapprehensions when they are visited by federal mine inspectors. The scope of these inspections necessarily include every aspect of mine health and safety conditions. Such conditions are coterminous with the operation of the mine for the simple reason that no other operations, of a different kind, are carried out at these sites. Consequently there is no real danger that a federal mine inspector will exceed his authority. Similarly, the mine owner has a legal obligation to be thoroughly familiar and to fully comply with the mandatory health and safety standards embodied in the Act. They are therefore aware of the limits of the inspector's lawful powers to search; and they have full knowledge that the inspectors act under lawful authority when they inspect the mines for health and safety conditions. We therefore do not find the statute at bar to be encumbered by any of the problems that plagued the warrantless entry scheme before the Court in *Camara*.

 By enacting the legislation now before this Court, the Congress has, in effect, pursuant to its police powers, substituted a legislative pronouncement for case by case judicial determinations. It has, through this legislation, essen-

---

5. The mine operator, though, does have a general expectation of privacy in his offices on the mining property. There is, however, no expectation of privacy in the maps, books and records which are maintained for and in compliance with the Mine Safety Act. These must, of course, be produced upon demand to the federal inspector when he makes his unannounced entry. But the Act does not authorize these inspectors to rummage in any wholesale way or to initiate a general search of the mine operator's offices for such records. See n. 4, *supra*.

6. "It is also plain that inspections for compliance with the Gun Control Act pose only limited threats to the dealer's justifiable ex-

pectations of privacy. When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection. Each licensee is annually furnished with a revised compilation of ordinances that describe his obligations and define the inspector's authority. . . . The dealer is not left to wonder about the purposes of the inspector or the limits of his task."

United States v. Biswell, 406 U.S., at 316, 92 S.Ct., at 1596. Also see Almeida-Sanchez v. United States, *supra*, 413 U.S. at 271, 93 S. Ct. 2535.

tially determined that probable cause or exigent circumstances exist in the coal industry so as to make warrantless searching of its mines reasonable. Congress has further determined that the conditions that prevail in many mines endanger or potentially endanger the health and safety of the miners who work in this industry. While neither Congress nor public opinion are free to suspend constitutional protections by either statutory enactment or popular referendums, see Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Alkire v. Cashman, 350 F.Supp. 360 (S.D.Ohio 1972), aff'd, 477 F.2d 598 (C.A.6, 1973), cert. pend. (1973), Congress may, through the valid exercise of its Commerce Cláuse powers, attempt to delineate and define the limits of these protections. In the Fourth Amendment area, where the essence of the right hinges on a concept of reasonableness, the Congressional definition is entitled to great weight. In the case at bar, as we conclude that there was some basis, both in fact and in law, for Congress' approach, we refuse to second guess its determination.[7]

The plaintiff has further contended that the frequency of inspections by the federal mine agents and the large number of violations issued constitutes an abuse in fact of the power to unannounced entry. The nub of this contention sounds under the Equal Protection Clause.

■ As we have noted above, this three-judge court was convened to adjudicate a facial attack on the constitutionality of the Act. We will not consider the reasonableness of individual searches nor the reasonableness of the frequency of inspection of plaintiff's mines. The Act itself mandates frequent inspections. When an inspection results in a notice of violation, the mine operator has a right of administrative

review. 30 U.S.C. §§ 814, 815. Questions regarding the reasonableness of these entries must be raised in the first instance before the Secretary. It is not plain from the record now before us whether the numerous searches herein involved were justified by the existence of unusually unsafe conditions at the mine.

The Act further provides that if relief is denied administratively, the mine operator is entitled to judicial review in the United States District Court. 30 U.S.C. § 816. After the exhaustion of administrative remedies, a single-judge district court is the most appropriate forum in which to seek review of allegations of unreasonable searches in violation of the Equal Protection Clause. See Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). It, of course, goes without saying that ". . . [a]ny law which is nondiscriminatory on its face may be applied in such a way as to violate the Equal Protection Clause of the Fourteenth Amendment." Furman v. Georgia, 408 U.S. 238, 257, 92 S.Ct. 2726, 2735, 33 L. Ed.2d 346 (1972) (Douglas, J., *concurring*); also see Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Yick Wo v. Hopkins, *supra*. The United States District Courts stand always ready in appropriate proceedings to remedy these abuses of official discretion or presumptions when they are shown to exist. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (*per* White, J.).

### ORDER

For the reasons and on the grounds which more fully appear in the Opinion of this Court filed simultaneously herewith, it is concluded that the challenged portions of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.

---

7. Our view might be entirely otherwise were we not dealing with a business context of a nearly inherently dangerous type. If Congress, for example, after taking note of the wide incidence of crime, authorized warrantless entry into private homes, we would be unable to reconcile such a statute with the command of the Fourth Amendment.

C. § 801 et seq., which authorize warrantless searches of coal mines, are without constitutional infirmity under the Fourth Amendment of the Constitution. Plaintiff's claims are therefore without merit; it is not therefore entitled to the requested injunctive relief.

Accordingly, it is ordered that the complaint must be, and the same is hereby, dismissed.