**STATE LIQUOR COMMISSION**

v.

**Lucien C. GILBERT d/b/a Pine Street Cafe.**

Supreme Judicial Court of Maine.

Nov. 16, 1970.

John E. Quinn, Asst. Atty Gen., Augusta, for plaintiff.

Severin Beliveau, Rumford, for defendant.

Before DUFRESNE, C. J., and WEBBER, MARDEN, WEATHERBEE, POMEROY and WERNICK, JJ.

MARDEN, Justice.

On report from an appeal to the Superior Court from a decision of the Administrative Hearing Commissioner (Com-

missioner) [1] holding appellant in violation of his liquor license and ordering a five day suspension.

Appellant held a 1968 part-time Class A Tavern Malt Liquor License under the provisions of 28 M.R.S.A., Liquors.[2] A portion of Section 351 of that Title provides that:

"(N)o licensee shall refuse the commission or its representatives the right at any time completely to inspect the entire licensed premises or to audit the books and records of the licensee."

The record supports the finding by the Commissioner that on December 17, 1968 representatives of the Maine State Liquor Commission (Inspectors) visited appellant's premises at 26 Pine Street, Lewiston. The proprietor-licensee-appellant (appellant) was not present, but a waitress who appeared to be in charge, to whom the Inspectors identified themselves, was told that they "were going to check the premises." She made no reply.

The Inspectors had no search warrant.

During the inspection, the Inspectors observed behind one of the service counters some tickets identified with a guessing game and some cards identified with a raffle, both hereinafter referred to as tickets, which tickets the Inspectors ultimately took. At some time during this visit, whether before or after the seizure of the tickets is not clear, appellant arrived at the scene. He stated that he just happened to come in. Inspector J stated that he asked the waitress to call the appellant. In either event, appellant arrived, and was advised that the Inspectors felt he had violated his license.

Appellant "cooperatively" explained "how the tickets worked," the conclusion being inescapable that they were elements of a lottery and game of chance.

The Inspectors removed the tickets from the premises, without objection by the appellant, and seasonably filed a complaint with the Commissioner charging the appellant with a violation of his license "to wit: did permit possession of gambling materials on his licensed premises, * * * in violation of Title 17, Maine Revise Statutes 1964, Sections 1811 and 2301," [3] and Commission Rule 25.[4]

A second count in the complaint was not substantiated.

Before the Commissioner, appellant contended that the entry and seizure of the tickets, without a search warrant, was a violation of appellant's constitutional rights (Fourth Amendment, United States Constitution, Article I, Section 5, Constitution of Maine) and that evidence based upon such entry, inspection and seizure, was inadmissible and wrongfully accepted by the Commissioner. The tickets were not offered in evidence.

Upon appeal, the Superior Court reported the case on the following issues:

"1. Whether the seizure of the evidence by the State Liquor Inspectors from Licensee-Appellant on December 17, 1968 was constitutional.

"2. Whether that portion of Title 28, Section 351 MRSA, relating to the au-

---

1. Authorized under State Administrative Code, 5 M.R.S.A. §§ 2301–2452, inclusive, *to entertain and adjudicate complaints* from named agencies, of which the State Liquor Commission is one, with appeal rights.

2. Sec. 51 et seq. *placing general supervision of the state liquor monopoly in the* Liquor Commission, with power in the Commission to establish rules with the force of law.

3. Sec. 1811—Prohibiting possession of gambling apparatus. Sec. 2301—Prohibiting schemes of chance.

4. Rule 25 as of December 1968, now Rule 26: "No licensee * * * shall allow in or upon his licensed premises any * * * illegality * * *."

thority of the Liquor Commission 'completely to inspect the entire license premises' is constitutional."

Preliminarily it is to be borne in mind that appellant is not charged with a violation of a criminal law. The violation is addressed to the license.

■■ The enterprise in which appellant is engaged is a part of an industry which, by its nature and the public interest involved, has been subject to governmental restriction, regulation and control from its beginning. The merchandising of alcoholic beverages under a State monopoly increases the scope and detail of that control. The legislature within its inherent police power has broad authority to devise controls considered by it appropriate and including the authorization of searches not unreasonable. Indeed as a matter of law the provision granting the Inspectors "the right at any time" to inspect the licensed premises was a condition of the license,— by which freedom of entry and inspection was granted by the licensee in advance, and was a voluntary waiver of such claim to privacy as he otherwise might have had respecting the premises covered by his license. See Zap v. United States 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946), and Hurless v. Department of Liquor Control, 136 N.E.2d 736 (Ohio App.1955). There was no occasion for the Inspectors to consider process in aid of their purpose.

From the factual standpoint, neither the waitress in charge of the premises nor the proprietor-appellant, upon his arrival, expressed any objection to the presence of the Inspectors or the taking and removal from the premises of the tickets. The entry of the Inspectors with a statement that they were there to inspect the premises was not of sufficient significance to the waitress to cause her to report their presence to the absent proprietor. The proprietor expressed neither by voice nor conduct any objection to their presence or their seizure and removal of the tickets.

A comparable "right of inspection" provision granted by the Congress in connection with the enforcement of the Internal Revenue Code as applied to Alcohol excise taxes is found in 26 U.S.C.A. § 5146(b).[5] Such right and the evidence acquired by its exercise, without warrant and without objection by the "licensee," was held valid as against Fourth Amendment objections in Peeples v. United States, 341 F.2d 60 (5 CCA 1965), cert. den. 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280; United States v. Duffy, 282 F.Supp. 777 (D.C.N.Y.1968); and United States v. Sessions, 283 F.Supp. 746 (D.C.Ga.1968), all of which were criminal prosecutions, vis-a-vis, the administrative enforcement here.

Appellant urges that Camara v. Municipal Court of the City and County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), (inspection of private dwelling under Housing Code) and See v. City of Seattle, 387 U.S. 541, 87 S. Ct. 1737, 18 L.Ed.2d 943 (inspection of a commercial building under Fire Code) are decisive.

Both of these cases had "right of inspection" ordinances, both appellants had been penalized under criminal law for refusing to permit the inspection, absent a search warrant, and both cases stand for the proposition that under the Fourth and Fourteenth Amendments "administrative entry, without consent, * * * may only be compelled through prosecution or physical force within the framework of a warrant procedure." See, supra, [8–10] at page 1740, of 87 S.Ct. These cases have been up-dated in Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), but they are not apposite.

5. "The Secretary or his delegate may enter during business hours the premises (including places of storage) of any dealer for the purpose of inspecting * * * any records * * * and any distilled spirits, * · * * kept * * * by such dealer on such premises."

In all of these cases the appellant refused to permit the inspection, *Camara, supra,* and *See, supra,* were prosecuted for the refusal, *Colonnade, supra,* brought suit to obtain return of the seized liquor, with success, the Court saying [3, 4] at page 777 of 90 S.Ct.:

"Under the existing statutes, Congress selected a standard (of reasonableness for searches and seizures) that does not include forcible entries without a warrant. It resolved the issue not by authorizing forcible, warrantless entries, but by making it an offense for a licensee to refuse admission to the inspector."

Such is not our case.

It is to be noted that both *Duffy, supra,* and *Sessions, supra,* post date *Camara, supra,* and *See, supra,* and both *See, supra,* [8–10] at page 1740 of 87 S.Ct. and *Colonnade, supra,* [1] at page 777 of 90 S.Ct. recognize that " 'licensing programs' requiring inspection \* \* \* can be resolved 'on a case-by-case basis under the general Fourth Amendment standard of reasonableness.' "

■■ The Maine "right of inspection" statute is reasonable, the inspection involved was without objection, the taking of the tickets was, and the statute is, constitutionally valid.

Appeal denied.