WOODS & ROHDE, INC., d/b/a Alaska Truss & Millwork, Roger Woods and Vernon Rohde, Petitioners,

v.

STATE of Alaska, DEPARTMENT OF LABOR, Respondents.

No. 2903.

Supreme Court of Alaska.

June 2, 1977.

Roger E. Henderson, Anchorage, for petitioners.

David T. LeBlond, Asst. Atty. Gen., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for respondents.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

RABINOWITZ, Justice.

On April 21, 1976, a compliance officer of the Occupational Safety and Health Division of the State of Alaska, Department of Labor, after presenting his credentials to officials of Alaska Truss & Millwork, at-

tempted to inspect the company's private business premises which were located in Anchorage, Alaska.[1] Entry and inspection was refused by the agents and owners of Alaska Truss & Millwork. According to the Department of Labor, the purpose of the attempted inspection was "to determine whether the company was in compliance with Alaska's occupational safety and health standards, promulgated pursuant to the Occupational Safety and Health Act (OSHA)."[2]

Upon petitioners' refusal to allow the compliance officer to conduct an inspection of the business premises of Alaska Truss & Millwork, the compliance officer reported the refusal to the Deputy Director of the Division of Occupational Safety and Health. Respondent Department of Labor filed suit in superior court pursuant to AS 18.60.-083(b) and 8 AAC 61.030[3] seeking a temporary restraining order preventing petitioners from refusing entry to authorized compliance officers of the Department of Labor. On April 23, 1976, the superior court entered a temporary restraining order compelling petitioners to submit to entry and inspection. The order of the superior court was thereafter stayed by Justice Burke sitting as a single justice, pursuant to Appellate Rule 37(b), on condition that a petition for review be filed. A petition was thereafter filed and review granted by this court.

The focal point of this controversy centers on AS 18.60.083(a) of Alaska's Occupational Safety and Health Act. This section provides, as to the right of entry and inspection, that:

A representative of the department, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized to (1) enter without delay and at reasonable times a factory, plant, establishment, construction site, or other area, work place or environment where work is performed by an employee of an employer; and (2) inspect and investigate during regular working hours and at other reasonable times, and with reasonable limits and in a reasonable manner, a place of employment and all pertinent conditions, structures, machines, devices, equipment and materials, and to question privately an employer, owner, operator, agent or employee.

As framed by petitioners, the question presented for review in the case at bar is "whether a court of this state may require the owners or occupiers of private premises to submit to a routine search or inspection to determine safety compliance in the absence of a valid search warrant, probable cause to believe a violation exists, or exigent circumstances." According to respondents, the question presented for review is whether "a warrantless OSHA inspection, as authorized by AS 18.60.083(a), [is] an unconstitutional search."

In 1970 the United States Congress enacted the Occupational Safety and Health Act which, although preempting the field, permitted the states to exercise jurisdiction over occupational safety and health under approved state plans with standards which "are or will be at least as effective in providing safe and healthful employment and places of employment as the standards" promulgated under the federal act.[4] The Alaska plan received approval in 1973. Alaska's OSHA is grounded on legislative findings

that personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to,

---

1. Petitioners assert in their petition that the areas requested to be inspected by the compliance officer "are privately owned, and are not open to the general public."

2. The Occupational Safety and Health Act is found in AS 18.60.010–AS 18.60.105.

3. AS 18.60.083(b) provides in pertinent part as follows:

If a person fails to grant a right of entry and inspection, the department may seek an order from the superior court compelling the person to submit to entry and inspection. 8 AAC 61.030 provides in part that:
In the event of a refusal of entry for inspection, the department may seek an appropriate order from the superior court compelling entry and inspection.

4. 29 U.S.C. § 667(c)(2).

the people of the state in terms of loss of production, wage loss, medical expenses and disability compensation payments. . . . For these reasons it is found and declared necessary to undertake a program to reduce the incidence of work-related accidents and health hazards in the state.[5]

AS 18.60.083(a)(1) and (2), authorizing the right of entry and inspection, substantially parallel the federal counterpart, 29 U.S.C. § 657(a).[6] By its terms, Alaska's OSHA is made applicable to any employer "who has one or more employees."[7] AS 18.60.095 provides penalties for violations of the Act which range from civil fines to fines and imprisonment for specified types of violations. Under the Act, Alaska's Department of Labor is obligated to

> establish and enforce occupational safety and health standards that prescribe requirements for safe and healthful working conditions for all employment . . . .[8]

In turn, employers are required to do everything necessary to protect the life, health and safety of employees including

> complying with all occupational safety and health standards and regulations promulgated by the department.[9]

Respondents take the position that in order to insure compliance with OSHA standards, the Alaska act authorizes warrantless administrative entry and inspection.[10] Respondents further note that this right of entry and inspection is specifically limited in that "[i]t must be exercised during regular working hours or other reasonable times, and within reasonable limits and in a reasonable manner."[11] Under AS 18.60.-083(a)(1) the right of entry extends only to places where work is performed by an employee. The inspection authorized is confined to places of employment and pertinent conditions, structures, machines, devices, equipment and materials.[12] Further, a representative of the employer must be given an opportunity to accompany the compliance officer in his inspection.[13] The compliance officer making the inspection must meet prescribed minimum qualifications which include at least 5 years general work experience in the field which he or she is assigned to inspect.[14]

The foregoing outlines the general statutory setting in which the now questioned right of entry and inspection provided for in AS 18.60.083(a) is found. Resolution of the issue whether warrantless OSHA inspections authorized under AS 18.60.083(a) are constitutional requires analysis of the decisional law pertaining to searches and seizures as well as emerging federal prece-

---

**5.** AS 18.60.010.

**6.** 29 U.S.C. § 657(a) reads:

> In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—
>
> (1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and
>
> (2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

**7.** AS 18.60.105(4).

**8.** AS 18.60.030(6).

**9.** AS 18.60.075(a)(1).

**10.** The text of AS 18.60.083(a) has been previously set out in the text of this opinion.

**11.** See AS 18.60.083(a)(2).

**12.** AS 18.60.083(a)(2).

**13.** AS 18.60.087. The Act also provides, in AS 18.60.099, that:

> Information obtained by the department in connection with an inspection or proceeding related to enforcement of occupational safety and health standards which contains or which might reveal a trade secret referred to in 18 U.S.C., § 1905 is confidential.

**14.** AS 18.60.055. As representatives of the Alaska Department of Labor, the compliance officers must present appropriate credentials to the owner, operator or agent in charge of the subject premises as a prerequisite to any entry and inspection. AS 18.60.083.

dent construing the federal counterpart of AS 18.60.083(a).

The seminal decisions in the area of administrative searches are *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). In these cases the Supreme Court of the United States reviewed the applicability of the fourth amendment to building inspection programs conducted by local governments. In *Camara* a lessee had been charged with refusing to allow a city inspector to inspect his premises for possible housing code violations. Camara had refused because the inspector did not have a search warrant, although the inspector did claim lawful authority to conduct the search under the local housing code.[15] The Supreme Court held that the fourth amendment did not permit warrantless administrative inspections such as the one attempted in *Camara,* overruling an earlier decision, *Frank v. Maryland,* 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959).

The Supreme Court began its analysis of whether a search warrant was required with recognition of "one governing principle, justified by history and by current experience":

> [E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant.[16]

It considered the three reasons advanced by the *Frank* court for permitting administrative health and safety inspections without warrants, finding each insufficient to justify another exception to the warrant requirement. First, the *Frank* court had asserted that these inspections only peripherally infringed upon the interest of personal privacy underlying the fourth amendment and did not infringe at all upon the more important fourth amendment concern of

protection from criminal prosecution. The *Camara* majority disagreed, insisting that the "privacy interest," of the fourth amendment was deserving of the same degree of solicitude accorded the "self-protection interest," and that, ironically self-protection was also threatened by administrative searches because compliance with regulatory laws is typically enforced by criminal complaint. 387 U.S. at 530–31, 87 S.Ct. at 1731–32, 18 L.Ed.2d at 936–37.

Second, the *Frank* court had concluded that in the context of an administrative search, the warrant machinery could serve no useful function because the decision to inspect a municipal area is based upon assessment of broad factors, such as the area's age and condition and the interval of time since the last inspection. The *Frank* court reasoned that so long as the municipal ordinance authorizing the inspection imposed reasonable restraints as to the time and manner of inspection, a magistrate could serve no purpose other than to rubber stamp the policy decision to inspect. Again the *Camara* majority disagreed, finding that the *Frank* opinion had unduly discounted the purposes of the warrant requirement of the fourth amendment. The Court stated:

> Under the present system, when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization. These are questions which may be reviewed by a neutral magistrate without any reassessment of the basic agency decision to canvass an area. Yet, only by refusing entry and risking a criminal conviction can the occupant at present challenge the

---

**15.** The inspector relied upon § 503 of the San Francisco Housing Code, which provided that:

> Authorized employees of the City departments or City agencies, so far as may be necessary for the performance of their duties, shall, upon presentation of proper creden-

tials, have the right to enter, at reasonable times, any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code.

**16.** 387 U.S. at 528–29, 87 S.Ct. at 1731, 18 L.Ed.2d at 935.

inspector's decision to search. . . . The practical effect of this system is to leave the occupant subject to the discretion of the official in the field. This is precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search. . . . We simply cannot say that the protections provided by the warrant procedure are not needed in this context; broad statutory safeguards are no substitute for individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty.[17]

The final *Frank* justification invoked the public interest in comprehensive enforcement of minimum fire, housing and sanitation standards. It was contended that this interest could be advanced only by routine, systematic inspection of all structures. While not questioning the importance of the public interest being advanced, the *Camara* court insisted that this argument was misdirected. Justice White explained:

> In assessing whether the public interest demands creation of a general exception .to the Fourth Amendment's warrant requirement, the question is not whether the public interest justifies the type of search in question, but whether the authority to search should be evidenced by a warrant, which in turn depends in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search.[18]

Finding no evidence that the code inspection programs would be significantly impaired by a reasonable warrant requirement, the Supreme Court refused to find this public need argument dispositive.

Having determined that important fourth amendment rights could be safeguarded by the recognition of a warrant requirement and that there was no compelling reason for

excepting administrative inspections from that requirement, the *Camara* majority held that the lessee had a constitutional right to insist that the inspector obtain a warrant to search. It did not rest with that narrow decision, however. Finding no justification for "ignoring the question whether some other accommodation between public need and individual rights is essential," [19] the Court considered whether the warrant must be supported by a showing of probable cause to believe that a particular dwelling contained code violations. Since the decision to inspect an area was inevitably based upon appraisal of conditions in the area as a whole, a more exacting probable cause requirement would have effectively foreclosed the inspection programs. In determining whether the probable cause requirement would permit an assessment of the need for inspection based on area-wide considerations, the Supreme Court focused on the nature of the fourth amendment: it was a prohibition against unreasonable searches and seizures. A warrant issued on the basis of area-wide factors would suffice if a search pursuant thereto was "reasonable" within the meaning of the Constitution. Having thus framed the issue, the Supreme Court resolved it in the following fashion:

> Unfortunately, there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails. But we think that a number of persuasive factors combine to support the reasonableness of area code-enforcement inspections.[20]

Three such factors were identified by the Supreme Court: (1) the longstanding acceptance of area-wide inspection programs, (2) the important public interest that would be frustrated by a more restrictive probable cause requirement, and (3) the relatively limited invasion of privacy constituted by

---

17.  *Id.* at 532–33, 87 S.Ct. at 1732, 18 L.Ed.2d at 937–38.

18.  *Id.* at 533, 87 S.Ct. at 1733, 18 L.Ed.2d at 938.

19.  *Id.* at 534, 87 S.Ct. at 1733, 18 L.Ed.2d at 938.

20.  *Id.* at 536–37, 87 S.Ct. at 1735, 18 L.Ed.2d at 940.

such an inspection. Thus, the Supreme Court concluded:

> [This] approach neither endangers time-honored doctrines applicable to criminal investigations nor makes a nullity of the probable cause requirement in this area. It merely gives full recognition to the competing public and private interests here at stake and, in so doing, best fulfills the historic purpose behind the constitutional right to be free from unreasonable government invasions of privacy.[21]

In *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the only issue before the Supreme Court of the United States was whether the principles enunciated in *Camara* would be extended to administrative inspections of commercial premises. The Court had little trouble making this extension.

> We hold . . . that the basic component of a reasonable search under the Fourth Amendment—that it not be enforced without a suitable warrant procedure—is applicable in this context, as in others, to business as well as to residential premises. Therefore, appellant may not be prosecuted for exercising his constitutional right to insist that the fire inspector obtain a warrant authorizing entry upon appellant's locked warehouse.[22]

The Court expressly reserved comment on inspections conducted pursuant to a licensing program in a regulated industry. The constitutional validity of that type of warrantless administrative inspection was raised in two subsequent cases.

In *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), the Supreme Court attempted its first clarification of constitutional requirements in the area of administrative searches since *Camara* and *See*. A federal agent of the Alcohol and Tobacco Tax Division of the Internal Revenue Service had noticed what was a possible violation of the federal excise tax laws when he was a guest at a party at Colonnade's catering establishment. When federal agents returned later, they sought entrance to a locked liquor storeroom in the cellar of the establishment. Colonnade's president asked if they had a search warrant and was told that they did not need one. He still refused to unlock the storeroom; an agent broke the lock and entered, seizing several liquor bottles. The federal statutory scheme gave the Secretary of the Treasury and his delegates broad authority to inspect liquor dealers' establishments.[23] The question, as framed by the Court, was

> whether the imposition of a fine for refusal to permit entry—with the attendant consequences that violation of inspection laws may have in this closely regulated industry—is under this statutory scheme the exclusive sanction, absent a warrant to break and enter.[24]

The Supreme Court applied the formula set out in *See* for determining the constitutionality of licensing programs which require inspections, that is, "on a case-by-case basis under the general Fourth Amendment standard of reasonableness," [25] and held that the forcible entry was impermissible. The Court stated:

> What was said in *See* reflects this Nation's traditions that are strongly opposed to using force without definite authority to break down doors. We deal here with the liquor industry long subject to close supervision and inspection. As respects that industry, and its various branches including retailers, Congress has broad authority to fashion standards of reasonableness for searches and seizures. Under the existing statutes, Congress selected a standard that does not include forcible entries without a warrant. It re-

---

**21.** *Id.* at 539, 87 S.Ct. at 1736, 18 L.Ed.2d at 941.

**22.** 387 U.S. at 546, 87 S.Ct. at 1741, 18 L.Ed.2d at 948.

**23.** *See* 26 U.S.C. §§ 5146(b) and 7606.

**24.** 397 U.S. at 74, 90 S.Ct. at 775, 25 L.Ed.2d at 63.

**25.** 387 U.S. at 546, 87 S.Ct. at 1741, 18 L.Ed.2d at 948.

solved the issue, not by authorizing forcible, warrantless entries, but by making it an offense for a licensee to refuse admission to the inspector.[26]

*United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), was one of the next cases presented to the Court in the area of administrative searches.[27] The defendant was a pawnshop operator who was federally licensed to deal in sporting weapons. Biswell's business was visited by a policeman and a Treasury agent who inspected Biswell's books and then sought entry to a gun storeroom. Biswell asked for a search warrant and was told that the agent did not have one, but that section 923(g) of the Gun Control Act of 1968,[28] a copy of which was shown to Biswell, authorized such inspections. Biswell then unlocked the storeroom and the agent found and seized two sawed-off rifles which Biswell was not licensed to possess. Biswell was indicted and convicted for dealing in firearms without having paid the requisite tax. The Tenth Circuit reversed the conviction and the Supreme Court reversed that decision. The Court noted that regulation of interstate traffic in firearms is not as "deeply rooted in history" as governmental control of the liquor industry, but determined that "close scrutiny of this traffic is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders."[29] The Su-

preme Court went on to note that proper enforcement of the Gun Control Act dictated that "inspections without warrant must be deemed reasonable official conduct under the Fourth Amendment."[30] The Supreme Court stated:

Here, if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible.[31]

The Court noted that when a dealer chooses to engage in that business, he knows that he will be subject to inspections. The Court concluded that:

We have little difficulty in concluding that where, as here, regulatory inspections further urgent federal interest, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute.[32]

Lower federal courts and state courts have adopted the Supreme Court's approach in *Colonnade* and *Biswell* to validate many varieties of administrative searches. Not unexpectedly, the state liquor law inspections have been widely upheld.[33] So, too, have warrantless inspections of food establishments,[34] junkyards,[35] pharmacies[36] and

**26.** 397 U.S. at 77, 90 S.Ct. at 777, 25 L.Ed.2d at 65.

**27.** In 1971, the Court decided *Wyman v. James*, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408, in which a welfare mother's AFDC benefits had been terminated for her refusal to permit a caseworker's home visit. The Court held 5–4 that the home visit was not a "search" within the meaning of the fourth amendment, and 6–3, that even if the visit constituted a "search," it was not constitutionally invalid since not unreasonable.

**28.** 18 U.S.C. § 921 *et seq.*

**29.** 406 U.S. at 315, 92 S.Ct. at 1596, 32 L.Ed.2d at 92.

**30.** *Id.* at 316, 92 S.Ct. at 1596, 32 L.Ed.2d at 92.

**31.** *Id.*

**32.** *Id.* at 317, 92 S.Ct. at 1597, 32 L.Ed.2d at 93.

**33.** *E.g., State v. Dailey*, 209 Kan. 707, 498 P.2d 614 (1972); *State Liquor Comm'n v. Gilbert*, 270 A.2d 876 (Me. 1970).

**34.** *State v. Phelps*, 12 Ariz.App. 83, 467 P.2d 923 (1970).

**35.** *State v. Wybierala*, 235 N.W.2d 197 (Minn. 1975).

**36.** *United States ex rel. Terraciano v. Montanye*, 493 F.2d 682 (2d Cir. 1974); *People v. Curco Drugs, Inc.*, 76 Misc.2d 222, 350 N.Y. S.2d 74 (Crim.Ct. 1973).

nursing homes.[37] Safety inspections without warrants have been upheld when conducted by the Coast Guard,[38] when conducted after a fire,[39] when made a condition of airplane boarding [40] and when made pursuant to the Federal Coal Mine Health and Safety Act.[41] The courts have allowed a warrantless search of luggage in furtherance of an agricultural quarantine [42] and a warrantless search pursuant to a horse racing license.[43] The warrantless search provision of the Federal Food, Drug and Cosmetic Act has been upheld as well.[44]

The cases upholding the warrantless searches made pursuant to statutory authorization generally rely on the history of regulation in the field, a theory of implied consent or an urgent state or federal interest in the warrantless inspection. All of these bases are found in the United States Supreme Court's opinions in *Biswell* and *Colonnade*.[45]

Of the seven cases [46] in which the constitutionality of the warrantless search provision of the federal OSHA has been raised, the lower federal courts have reached the question in five. In *Brennan v. Buckeye Industries, Inc.*, 374 F.Supp. 1350 (S.D. Ga. 1974), the court upheld the constitutionality of the search and stated:

cause as that term is used in traditional criminal settings. The court stated:

> Perfunctory as it may be under present law, the decision of an independent judicial officer is still a necessary factor.

352 F.Supp. at 18.

The New York Court of Appeals recently was presented a case involving a search made pursuant to the New York Tax Law. In *People v. Rizzo*, 40 N.Y.2d 425, 386 N.Y.S.2d 878, 353 N.E.2d 841 (1976), after learning that the defendant had been previously arrested in New Jersey for possession of untaxed cigarettes, a New York tax evasion officer conducted surveillance of the defendant's several residences. The officer saw Rizzo place a cardboard box in the trunk of his car which had been backed up to the garage door. The tax agent conducted a search of several cartons in the garage and found that none of the cigarettes had the required New York tax stamps. An examination of the car produced 54 additional cartons of untaxed cigarettes. The New York court held that the statute authorizing searches became operational only when there was probable cause to believe that the regulated activity was taking place at that location. Finding no probable cause to believe that the regulated activity was taking place in Rizzo's garage prior to the time the agent entered Rizzo's property, the court affirmed the Appellate Division's reversal of conviction.

---

**37.** *Uzzillia v. Comm'r of Health*, 47 A.D.2d 492, 367 N.Y.S.2d 795 (1975).

**38.** *United States v. One (1) 43 Foot Sailing Vessel*, 405 F.Supp. 879 (S.D. Fla. 1975).

**39.** *State v. Felger*, 19 Or.App. 39, 526 P.2d 611 (1974).

**40.** *United States v. Edwards*, 498 F.2d 496 (2d Cir. 1974); *People v. Hyde*, 12 Cal.3d 158, 115 Cal.Rptr. 358, 524 P.2d 830 (1974).

**41.** *Youghiogheny and Ohio Coal Co. v. Morton*, 364 F.Supp. 45 (S.D. Ohio 1973).

**42.** *United States v. Schafer*, 461 F.2d 856 (9th Cir. 1972).

**43.** *Lanchester v. Pennsylvania State Horse Racing Comm'n*, 16 Pa.Cmwlth. 85, 325 A.2d 648 (1974).

**44.** *United States v. Del Campo Baking Mfg. Co.*, 345 F.Supp. 1371 (D. Del. 1972); *cf. United States v. Litvin*, 353 F.Supp. 1333 (D.D.C. 1973).

**45.** However, the courts have not been unanimous in not requiring search warrants. In *United States v. Anile*, 352 F.Supp. 14 (N.D. W.Va. 1973), a drugstore owner was prosecuted under 26 U.S.C. § 7203 for failing to keep proper records. The district court granted the defendant's motion to suppress the evidence obtained in the warrantless search made pursuant to 21 U.S.C. § 360a(d). The court distinguished *Biswell* on the ground that the inspection in *Anile* was prompted by complaints, making it reasonable "to expect a trained investigator to recognize that the possibility of criminal prosecution was great under these circumstances." 352 F.Supp. at 17. The court noted that an administrative warrant could be obtained under the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.*, without a showing of probable

**46.** *Lake Butler Apparel Co. v. Secretary of Labor*, 519 F.2d 84 (5th Cir. 1975); *Accu-Namics, Inc. v. Occupational Safety and Health Review Comm'n*, 515 F.2d 828 (5th Cir. 1975); *Usery v. Centrif-Air Machine Co., Inc.*, 424 F.Supp. 959 (N.D. Ga. 1977); *Barlow's Inc. v. Usery*, 424 F.Supp. 437 (D. Idaho 1976); *Dunlop v. Hertzler Enterprises, Inc.*, 418 F.Supp. 627 (D. N.M. 1976); *Brennan v. Gibson's Prods., Inc.*, 407 F.Supp. 154 (E.D. Texas 1976); *Brennan v. Buckeye Indus., Inc.*, 374 F.Supp. 1350 (S.D. Ga. 1974).

Buckeye Industries is, constitutionally speaking, marching to the beat of an antique drum.[47]

In *Brennan v. Gibson's Products, Inc.*, 407 F.Supp. 154 (E.D. Texas 1976), a three-judge court held that the fourth amendment prohibited the search which the Secretary of Labor sought on the showing which he had made,[48] and, in order to construe 29 U.S.C. § 657(a)[49] constitutionally, further held that the OSHA inspection provisions do not authorize warrantless searches. Similar results were reached in *Dunlop v. Hertzler Enterprises, Inc.*, 418 F.Supp. 627 (D. N.M. 1976), and *Usery v. Centrif-Air Machine Co., Inc.*, 424 F.Supp. 959 (N.D. Ga. 1977). In *Barlow's, Inc. v. Usery*, 424 F.Supp. 437 (D. Idaho 1976), *appeal docketed*, No. 76–1143 (Supreme Ct. March 16, 1977), a three-judge court held that the warrantless inspection provisions of the federal OSHA were unconstitutional as being violative of the fourth amendment. The *Barlow's* court refused to adopt the *Gibson's Products* approach of construing the statute as requiring warrants.

In *Buckeye*, permission for a warrantless OSHA inspection was denied because the inspector refused to allow time so that the company's attorney could drive the 200 miles to the plant. An application was filed with the district court requesting a court order that Buckeye submit to the inspection. The Secretary of Labor conceded that there was no probable cause for issuance of a search warrant, but contended that the statutory authorization of 29 U.S.C. § 657(a) was sufficient. The court examined the restraints on inspectors with respect to time, place and purpose of the inspection imposed by the act and the regulations[50] promulgated thereunder. The court proceeded to review *Camara* and *See*, then discussed *United States ex rel. Terraciano v. Montanye*, 493 F.2d 682 (2d Cir. 1974), in which the Second Circuit upheld a warrantless seizure of the records of a licensed pharmacist made pursuant to a statutory right of inspection. The court then reviewed *Youghiogheny and Ohio Coal Co. v. Morton*, 364 F.Supp. 45 (S.D. Ohio 1973), in which a three-judge court upheld the validity of a warrantless inspection of a coal mine made pursuant to the Federal Coal Mine Health and Safety Act of 1969.[51] From these cases, the court concluded that Buckeye was "marching to the beat of an antique drum." The court did not find it necessary to discuss the "history of regulation" condition of *Biswell* as it applied to the case before it nor to establish the "large governmental interests" discussed in *Youghiogheny*.

In *Gibson's Products* the company refused to allow a routine inspection which was not prompted by complaint. The Secretary sought a court order compelling Gibson's to submit to the inspection. The court quoted language from *Camara* and *See*[52] and con-

---

47. 374 F.Supp. at 1356.

48. The proposed inspection, which was refused by *Gibson's*, was a routine inspection not occasioned by a complaint.

49. *See* note 6 *supra* for the text of 29 U.S.C. § 657(a).

50. 29 C.F.R. § 1903.7(d) provides that the inspections should be conducted so as to "preclude unreasonable disruption of the operations of the employer's establishment."

51. 30 U.S.C. § 801 *et seq.*

52. The three-judge court stated:
In great part, our inquiry begins and ends with two pronouncements of the Supreme Court, each taken from opinions recently and expressly reaffirmed:

[A]dministrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure.
*See v. City of Seattle*, 387 U.S. 541, 545, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967).
Broad statutory safeguards are no substitute for individualized review.
*Camara v. Municipal Court*, 387 U.S. 523, 533, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930 (1967).
These authorities and others . . . convince us that facially the inspection provisions of OSHA amount to just such an attempt at a broad partial repeal of the fourth amendment as is beyond the powers of Congress. Only a construction of them as enforcible solely by resort to some form of admin-

cluded that a warrantless search was unconstitutional. The court went through an extensive review of the constitutional background of the case, discussing *Biswell, Colonnade, United States v. Del Campo Baking Mfg. Co.*, 345 F.Supp. 1371 (D. Del. 1972) (Food, Drug and Cosmetic Act warrantless inspection of bakery upheld), *Youghiogheny, Terraciano, Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) (warrantless search near the border held invalid), and *Air Pollution Variance Board v. Western Alfalfa Corp.*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974) (*Camara* and *See* reaffirmed, but warrantless environmental search valid under the "open fields" exception). The court distinguished *Biswell* and *Colonnade* on the ground that they dealt with businesses with a history of close regulation and licensing by the government. The court stated:

> A central difference between those cases and this one is that businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade, whereas the petitioner here was not engaged in any regulated or licensed business. The businessman in a regulated industry in effect consents to the restrictions placed upon him.[53]

The court made specific note of the wide-reaching effect of the Occupational Safety and Health Act and the lack of congressional findings which would support warrantless inspections by supplying a basis for a determination that there was reasonable likelihood of violation in the businesses encompassed. The court stated:

> OSHA's sweep is broad, and Congress' findings supporting it are slender. Made subject to its warrantless inspection is every private concern engaged in a busi-

ness affecting commerce which has employees and all 'environments' where these employees work. It thus embraces indiscriminately steel mills, automobile plants, fishing boats, farms and private schools, commercial art studios, accounting offices, and barber shops—indeed, the whole spectrum of unrelated and disparate activities which compose private enterprise in the United States. . . . [T]he crucial features of the liquor and gun businesses searched [in *Colonnade* and *Biswell*] were licensing and a pervasive history of governmental regulation. Additional support for the warrantless searches there approved was found in the searchers' certain knowledge that the concerns searched had on the premises and dealt in the sensitive commodities— guns and liquors—which occasioned official scrutiny. By contrast, the discount house which is the target here is not licensed, it has no history of close regulation, and the OSHA provisions appearing facially to authorize the search are in no sense limited in their application to such businesses. Nor is there any reason whatever, let alone a certainty, to believe that the thing sought to be controlled— hazardous working conditions—exists in the area to be searched. A finding by Congress that such conditions exist in most enterprises subject to OSHA might throw a different light on the subject, but there was none, and we doubt there could have been.[54]

The *Gibson's Products* court then construed the Act in such a way as to avoid inconsistency with its interpretation of the fourth amendment, holding that since the Act does not explicitly authorize warrantless searches, it authorizes inspections over objection only when conducted pursuant to warrant.[55]

istrative search warrant such as *Camara* contemplates, *id.* at 538, 87 S.Ct. 1727, can save these provisions.
407 F.Supp. at 157. (footnote omitted)

**53.** *Id.* at 160.

**54.** *Id.* at 161–62.

**55.** The court's construction, though undoubtedly strained, was supported by the requirement of an "inspection warrant" in the Compliance Operations Manual and by a reference to "compulsory process" in 29 C.F.R. § 1903.4. The provision of the Alaska Admin. Code which deals with objections to inspection, 8 AAC 61.- 030, contains no similar provision.

148

Barlow's, Inc. v. Usery, 424 F.Supp. 437 (D. Idaho 1976), involved a corporation which was in the business of installing electrical and plumbing fixtures, heating and air conditioning units. A federal compliance officer went to the corporation's business premises for the purpose of conducting a safety and health inspection pursuant to section 8(a) of the Occupational Safety and Health Act, 29 U.S.C. § 657(a). The president and manager of Barlow's refused to allow the inspection "basing his refusal on the absence of a search warrant." The three-judge court rejected the "notion as espoused in *Brennan v. Buckeye Industries, Inc.*, 374 F.Supp. 1350 (S.D. Ga. 1974), that the *Colonnade* and *Biswell* decisions envision a trend of the Supreme Court to generally narrow the holdings of *Camara* and *See*." [56] In concluding that the validity of the warrantless inspection scheme of OSHA is controlled by *Camara* and *See*, the court in *Barlow's, Inc.* stated:

We simply cannot overlook the fact that in *Colonnade* and *Biswell* the court dealt with an 'industry long subject to close supervision and inspection' . . . and a 'pervasively regulated business . . . .' We believe that both of those cases fit into the *Camara* categorization of 'certain carefully defined classes of cases.' We have no such industry in this case. OSHA applies to all businesses that affect interstate commerce. 29 U.S.C. § 651(b)(3). As such, it applies to a wide variety of over 6,000,000 work places and does not focus on one particular type of business or industry. It cannot be questioned that this broad spectrum of businesses can be distinguished from the heavily-regulated liquor and firearm industries encountered in *Colonnade* and *Biswell* . . . .[57]

With this background of federal decisional law in the area of administrative search and seizure, as well as the federal decisional law relating specifically to the federal OSHA, we now turn to Alaska's relevant constitutional provisions and applicable de-

cisional law in the area of search and seizure. We do so because we have concluded that resolution of the question whether a warrantless OSHA inspection, as authorized by AS 18.60.083(a), is an unconstitutional search should be determined in accordance with principles embodied in the Constitution of Alaska.

■ Article I, section 14 of the Alaska Constitution provides, in part, that:

The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated.

In *Ellison v. State*, 383 P.2d 716, 718 (Alaska 1963), we noted that article I, section 14 of Alaska's Constitution contains "an even broader guarantee against unreasonable searches and seizures than does the fourth amendment to the Constitution of the United States." We drew this conclusion from the fact that the fourth amendment does not contain the phrase "and other property." Also of significance to our decision in the case at bar is the fact that Alaska's Constitution, unlike the federal Constitution, contains an explicit guarantee of privacy. This guarantee, article I, section 22 of the Alaska Constitution, provides:

The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.

Concerning the guarantees furnished by article I, section 14 of the Alaska Constitution, we said in *Weltz v. State*, 431 P.2d 502, 506 (Alaska 1967), that "[t]he primary purpose of these constitutional provisions is the protection of 'personal privacy and dignity against unwarranted intrusion by the State.'" Regarding article I, section 22 of the Alaska Constitution, we observed in *Ravin v. State*, 537 P.2d 494, 501 (Alaska 1975), that "[t]he effect of this amendment is to place privacy among the specifically enumerated rights in Alaska's

---

**56.** *Barlow's, Inc. v. Usery*, 424 F.Supp. 437, 440 (D. Idaho 1976).

**57.** *Id.* at 440–41.

constitution." [58] And as then Justice Boochever pointed out in his concurring opinion in *Ravin,*

> [s]ince the citizens of Alaska, with their strong emphasis on individual liberty, enacted an amendment to the Alaska Constitution expressly providing for a right to privacy not found in the United States Constitution, it can only be concluded that the right is broader in scope than that of the Federal Constitution.[59]

In construing the provisions of article I, section 14 of the Alaska Constitution in the context of criminal prosecutions, as distinguished from regulatory or administrative searches, this court has repeatedly cautioned that "a search without a warrant is per se unreasonable unless it clearly falls within one of the narrowly defined exceptions to the warrant requirement." [60] This principle of warrant preference received more detailed explication in *McCoy v. State,* 491 P.2d 127, 132 (Alaska 1971), where we noted that the Supreme Court of the United States has held that

> the principle of antecedent justification is so central to the Fourth Amendment that subject only to a few specifically established and well-delineated exceptions 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment.' [61]

In *Keller v. State,* 543 P.2d 1211, 1219 (Alaska 1975), we further observed that the purpose of the warrant requirement is to prevent the police from hasty, ill-advised, or unreasonable activities and that

> [t]he law allows the police to infringe upon a person's fundamental right to be free from search and seizure only when such infringement is reasonable. The conclusion that the imposition is reasonable should not be drawn by the very persons who are the agency for the deprivation of rights.

One additional facet of our decisional law should be mentioned at this point. In *Smith v. State,* 510 P.2d 793, 796–97 (Alaska 1973), after analyzing the Supreme Court's decisions in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), we adopted Justice Harlan's twofold test for determination of the applicability of fourth amendment protections. The test we embraced requires "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable'." [62]

Although the case at bar presents the first occasion in which this court has been

---

**58.** We further noted that

> this fact alone does not, in and of itself, yield answers concerning what scope should be accorded to this right of privacy.

*Ravin v. State,* 537 P.2d 494, 501 (Alaska 1975).

**59.** *Ravin v. State,* 537 P.2d 494, 514–15 (Alaska 1975).

**60.** *Erickson v. State,* 507 P.2d 508, 514 (Alaska 1973). *Accord, McCoy v. State,* 491 P.2d 127, 132 (Alaska 1971); *Bargas v. State,* 489 P.2d 130, 132 (Alaska 1971); *Ferguson v. State,* 488 P.2d 1032, 1037 (Alaska 1971); *Rubey v. City of Fairbanks,* 456 P.2d 470, 474 (Alaska 1969); *Sleziak v. State,* 454 P.2d 252, 256 (Alaska 1969), *cert. denied,* 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202.

**61.** *Quoting Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576, 585 (1967). *See also Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564, 576 (1971).

**62.** *Smith v. State,* 510 P.2d at 797, *quoting Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576, 588 (Harlan, J., concurring). In his dissenting opinion in *Smith v. State,* 510 P.2d 793, 799–80 (Alaska 1973), Justice Rabinowitz stated, in part:

> [I]t is essential to recognize that a free and open society cannot exist without the right of the people to be immune from unreasonable interference by representatives of their government. . . .
>
> Fourth amendment rights of the people, as well as the rights of Alaskan citizens under article I, section 14 or article I, section 22 of our constitution, are to be jealously guarded by the courts, and any governmental invasion of individuals' privacy is to be authorized only when reasonable and undertaken in accordance with the strict requirements of judicial process pertaining to the issuance of a search warrant.

*See also* Justice Dimond's dissenting opinion in *State v. Stump,* 547 P.2d 305, 308–11 (Alaska 1976).

squarely called upon to rule on the constitutionality of a statute authorizing a warrantless administrative or regulatory search, this court's opinion in *Nathanson v. State*, 554 P.2d 456 (Alaska 1976), has relevance to resolution of the issues in the case at bar. In *Nathanson*, appellant had been convicted of fishing for king crab before the legal opening of the season. Prior to trial Nathanson moved to suppress all evidence which was obtained by a search and seizure of his crab pots. During the course of a compliance search conducted by officials of the Fish and Game Department of crab pots in the Kachemak Bay area, they discovered that some of the pots were baited and contained king crab. Prior to the time Nathanson's pots were searched, they were lying on the sea floor, approximately 35 fathoms below the surface.

In *Nathanson* we concluded that fishers such as Nathanson could not harbor an actual subjective expectation of privacy in conducting their crabbing operations in the waters of the state, at least not one that " 'society is prepared to recognize as reasonable.' "[63] A major consideration in shaping this court's conclusion that Nathanson "had no protectable federal or state constitutional interest"[64] in the seized crab pots lay in the extensive degree of regulation of fisheries in the State of Alaska. In this regard we said:

> Alaska's fisheries are unquestionably an important resource of this state, for they provide a source of food and employment for the people of this state. . . . To insure the viability of this resource and the welfare of those dependent upon it, the State has broad powers in the regulation of the fisheries in the areas off the coast of Alaska. Commercial crabbing is closely regulated by the State, with nearly every phase of the operation coming under public scrutiny through licensing and inspecting of vessels and gear. For instance, prior to fishing for king crab in a registration area, the own-

er of a crab vessel must have it registered and its holds or live tanks inspected, as well as having its fishing gear licensed and registered for the registration area.[65] (footnotes omitted)

Thus, it is apparent that *Nathanson* is more closely related to *Biswell* and *Colonnade* than is the case at bar.

■ This brings us to the question raised by this petition, namely, whether the superior court erred when it entered its temporary restraining order preventing petitioners from refusing entry to authorized compliance officers of the State of Alaska's Department of Labor. We hold that the superior court's restraining order must be vacated and reversed because of our conclusion that a warrantless OSHA inspection, as authorized by AS 18.60.083(a), constitutes an unconstitutional search in that it is violative of article I, section 14 of the Alaska Constitution.

■ We reach this disposition for the following reasons: As was alluded to earlier, article I, section 14 of the Alaska Constitution contains an even broader guarantee against unreasonable searches and seizures than is found in its federal counterpart. Any doubts as to whether privacy interests in business or commercial premises were intended to be encompassed within the protections of this guarantee were laid to rest when our Founding Fathers chose to add the phrase "and other property" to Alaska's constitutional guarantee against unreasonable searches and seizures. Our conclusion that the Alaska constitutional guarantee appertains to commercial or business premises is also bottomed on the amendment to our constitution found in article I, section 22 and expounded upon in *Ravin v. State*, 537 P.2d 494, 501 (Alaska 1975). We think it clear from both section 22 and our decisional law that the right of privacy guaranteed to Alaskan citizens is broader in scope than that guaranteed in the federal Constitution. As previously noted, this right to

---

**63.** *Nathanson v. State*, 554 P.2d 456, 459 (Alaska 1976).

**64.** *Id.*

**65.** *Id.* at 458–59.

privacy is inexorably entwined in Justice Harlan's twofold test for the applicability of fourth amendment protections, adopted by this court in *Smith v. State*, 510 P.2d 793 (Alaska 1973). Although the record before us is somewhat incomplete on the point, we find that the petitioners in the case at bar exhibited an actual (subjective) expectation of privacy in their business establishment, and that their expectation of privacy is one that society is prepared to recognize as reasonable. Further, we find the reasoning of the Supreme Court of the United States in *Camara* and *See* persuasive [66] and supportive of our conclusion that article I, section 14 affords protection against warrantless administrative searches.

Like the Supreme Court of the United States in *Camara*, this court in the past has repeatedly enforced Alaska's constitutional preference for search warrants and has taken the view that except in certain carefully defined circumstances, warrantless searches are per se unreasonable in the constitutional sense. Since violations of Alaska's OSHA can result in significant fines and imprisonment, we think the self-protection and privacy interests, found determinative in *Camara*, of the owner of business premises is deserving of, although

not equivalent to, the significant constitutional solicitude and protection afforded Alaska's citizen in criminal prosecutions. For we are of the view that broad statutory safeguards are inadequate substitutes for individualized judicial review of applications for search warrants.[67] Without judicial review far too much discretion is lodged in the official in the field. Admittedly, the public interest in prevention of injuries and illnesses of employees arising out of work situations is a significant one, yet we are persuaded that authority to inspect and search one's business premises (the Alaska OSHA applies to every employer who has one or more employees) should be evidenced by a warrant and we believe the burden of obtaining a warrant is not likely to frustrate the purpose of OSHA inspections.[68] In all such cases it is necessary to balance the need for the administrative search against the invasion of privacy which such a search entails. Further, in this regard, we specifically endorse the Supreme Court's conclusion in *Camara* that the requisite showing necessary to obtain a warrant for an administrative search is one of attenuated probable cause and that this standard is both reasonable and constitutionally permissible.[69]

> Granted it is time consuming to obtain a warrant, but this is precisely one of the factors which our Founding Fathers weighed in fashioning constitutional protections against unreasonable searches and seizures. For my part, I would rather a neutral judge determine whether a warrant should issue and read the constitution as having made this very choice. (footnotes omitted)

**66.** We note that the United States Supreme Court recently reaffirmed the rationale employed in *See*. In *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), the Court held unconstitutional a warrantless search of a corporation's business office and seizure of various business records by agents of the Internal Revenue Service. The Court noted that the invasion of the corporation's "privacy was not based on the nature of its business, its license, or any regulation of its activities." 429 U.S. at 354, 97 S.Ct. at 629, 50 L.Ed.2d at 544.

**67.** In addition to the reasoning employed by the Supreme Court in *Camara* in rejecting the "rubber stamp" argument advanced in that case, we note that in the dissent in *McCoy v. State*, 491 P.2d 127, 143 (Alaska 1971), it was stated:

> Nor do I find the majority's expediency-rubber-stamp prediction either necessary or compelling. It assumes that our trial judges will default in the performance of their judicial obligations by automatically granting applications for warrants, and further assumes that this court will condone such practices.

**68.** It is reasonable to assume that in a great number of cases the affected business entity will consent to an inspection and the inspector will have no need to seek a warrant.

**69.** In *Camara v. Municipal Court*, 387 U.S. at 535, 87 S.Ct. at 1734, 18 L.Ed.2d at 939, the Supreme Court noted that in determining whether there is probable cause to issue a warrant for an administrative inspection, the judicial officer must focus on the balance between the need for the inspection and the reasonable goals of the administrative schemata. The Court recognized that the decision to conduct administrative inspections is frequently based on an "appraisal of conditions in the area

We are also in agreement with the reasoning of the lower federal courts in *Brennan v. Gibson's Products, Inc.*, 407 F.Supp. 154 (E.D. Texas 1976), and *Barlow's, Inc. v. Usery*, 424 F.Supp. 437 (D. Idaho 1976), and choose not to follow the court's reasoning in *Brennan v. Buckeye Industries, Inc.*, 374 F.Supp. 1350 (S.D. Ga. 1974). For, in our view, the courts in *Gibson's Products, Inc.* and *Barlow's Inc.* correctly distinguished the Supreme Court's decisions in *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), and *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), in concluding that the warrantless inspection authorization of the federal OSHA was constitutionally invalid under the rationale of *Camara* and *See*. *Colonnade* and *Biswell* involved businesses which had been subjected to a long history of supervision, inspection and pervasive regulation. Here we are confronted with legislation that is pervasive in its impact and reach; as noted previously, the Alaska OSHA covers within its ambit every employer who has one or more employees.[70] It thus embraces an enormous number of "unrelated and disparate activities"[71] which make up private enterprise in the State of Alaska. Further, it reaches many commercial undertakings which have no history of regulation let alone a history of intensive regulation.

Given the expansive protections afforded to citizens of Alaska by virtue of article I, sections 14 and 22 of the Alaska Constitution against warrantless searches and seizures and invasions of privacy, we conclude that the Alaska Constitution prohibits warrantless administrative inspections of the business premises of respondents.

Reversed.

BOOCHEVER, Chief Justice, concurring.

I believe that the issue presented in this case has been resolved by the United States Supreme Court in *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), and I concur in the opinion based on the requirements of the Supremacy Clause

---

as a whole" rather than on knowledge of particular infractions or conditions. 387 U.S. at 536, 87 S.Ct. at 1734, 18 L.Ed.2d at 939. The Court endorsed a concept of probable cause which takes into account the type of search that is being sought, the public interest justification for the intrusion and the degree of intrusion contemplated by the search or seizure. 387 U.S. at 538–39, 87 S.Ct. at 1735–36, 18 L.Ed.2d at 940–41.

The issuance of a search warrant requires a twofold determination of reasonableness. First, the judicial officer must find that the type of search is reasonable. Secondly, he or she must determine that the particular search requested is reasonable. In determining the reasonableness of the anticipated search, courts have been willing to apply an attenuated probable cause standard in administrative cases. As the court in *United States v. Thriftimart, Inc.*, 429 F.2d 1006, 1008–09 (9th Cir. 1970), stated:

> [T]he probable cause showing before a magistrate [in administrative search cases] is entirely different. There need be no probable cause to suppose a violation to support a warrant to inspect. All that is required is a showing that reasonable administrative standards for inspection have been established and are met in the inspection in question.

We are of the opinion that the courts of this state can reach the proper balance of interests in the cases that come before them by defining the exact nature of the governmental necessity underlying the proposed search or seizure, the extent of permissible privacy invasion and the requisite citizen protection. We are not content to leave this important balancing process entirely in the hands of the field inspector; the protection of the citizenry from unreasonable governmental intrusions into their privacy is too important a right to do so. We also recognize the need for governmental programs designed to enhance the health and safety of the citizenry. However, we feel that the warrant procedure with an attenuated probable cause standard can help to provide protection of essential rights without undermining the inspection programs.

**70.** Although it was not subjected to the type of analysis we employ in the case at bar, we think the factual situation presented in *Nathanson* brings the matter within the class of cases exemplified by *Colonnade* and *Biswell*. That is, Alaska's fisheries have a long history of regulation and such regulation has been pervasive. Thus, it can be argued that *Nathanson* could have been decided on the rationale of a constitutional regulatory warrantless search under the authority of *Colonnade* and *Biswell*.

**71.** *Brennan v. Gibson's Prods., Inc.*, 407 F.Supp. 154, 161 (E.D. Texas 1976).

of the United States Constitution.[1] Although I would decide the case differently if it had come to us as a matter of first impression, I do not believe it is within our power to permit inspections without a warrant.

In *See,* the Court held that the fourth amendment bars the prosecution of a property owner who has refused to permit a warrantless fire safety code enforcement inspection of a commercial warehouse. It concluded that:

> administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of the warrant procedure. 387 U.S. at 545, 87 S.Ct. at 1740, 18 L.Ed.2d at 947.

No suitable distinction between inspection of commercial business establishments under the OSHA statute and that of the Seattle fire safety ordinance has been suggested to justify a departure from the holding of *See.*

*See* addressed only the question of an entry and inspection without the consent of the property owner. The Seattle Fire Code provided for criminal penalties for refusal to permit a warrantless inspection. No criminal sanctions are applicable to a refusal to permit an OSHA inspection and, upon such refusal, the Department of Labor may not enter without an appropriate order from the superior court. *See* AS 18.60.-083(b), 8 AAC 61.030. Nevertheless, it appears that the employer may be subject to a civil penalty of up to $10,000.00 under AS 18.60.095(a). Assuming the applicability of the civil sanctions, I see little real distinction between the minimal criminal penalties involved in *See* and what might amount to a heavy fine.

The continued validity of *See* was called into question by the court in *Brennan v. Buckeye Industries, Inc.,* 374 F.Supp. 1350, 1355 (S.D. Ga. 1974). Relying in part on *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), and *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), the district court seemed to conclude that warrantless entry was not constitutionally impermissible if the regulatory inspection furthered a federal interest. Unlike the District Court in Georgia, I do not read *Biswell* and *Colonnade Catering* as essentially overruling *See* in the area of general health and safety inspections. Both cases involved inspection of businesses that were specially licensed by the government, and they are therefore distinguishable from situations where legislative interest and concern is of a more generalized nature.

If this were a question of first impression, however, I would construe our Alaska Constitutional right of privacy[2] and prohibition against unreasonable searches and seizures[3] in line with our decisions in *Ravin v. State,* 537 P.2d 494 (Alaska 1975), and *Nathanson v. State,* 554 P.2d 456 (Alaska 1976). In my concurring opinion in *Ravin,* I stated:

> The right to privacy . . . is not monolithic. . . . [T]he importance of the right may properly be related to the place where it is exercised, for example, at the home or in the market place. Other considerations would be the nature of relationships involved (marital, doctor-patient, attorney-client, etc.), the particular activity in question and the individual's interest in it.
>
> .     .     .     .     .
>
> With reference to laws challenged as invading the Alaskan right of privacy, I would apply a single flexible test dependent first upon the importance of the right involved. Based on the nature of that right, a greater or lesser burden would be placed on the state to show the relationship of the intrusion to a legitimate governmental interest. (footnote omitted) 537 P.2d at 515.

1. United States Constitution, art. VI.

2. Alaska Constitution, art. I, sec. 22.

3. Alaska Constitution, art. I, sec. 14.

In *Ravin*, we considered the right of privacy in the home to be of sufficient importance to override legislation prohibiting personal use and possession of marijuana. Similarly, I would hold that the right to privacy in a residence would prevail against the right to inspect under the OSHA law and, for this reason, would require a warrant.[4]

In contrast, I perceive a less compelling privacy interest in factories or commercial premises. Such commercial premises are routinely occupied and used by many other persons than the owners. Aside from work involving trade secrets, there is little that takes place in the premises that involves a significant privacy interest. Balanced against the privacy interests of the commercial property owner is the state's interest in preventing abuses of health and safety procedures and ensuring that all citizens have a safe place to work. The history of working conditions and safety requirements in our country has been one of slow progress. Each improvement—limitation of hours and increasing wages, elimination of child labor, the right to unionize and workers' compensation—has been met with strenuous and often violent opposition. Particularly against the background of this history, state efforts at protecting the health and safety of workers should be given great deference. It seems to me that the minimal rights of privacy involved here are adequately protected by the OSHA statute and regulation. Therefore, I would conclude that an OSHA inspection of commercial premises does not constitute an unreasonable search within the meaning of the United States and Alaska Constitutions and that a warrant is not required.

The Supreme Court in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), advanced a number of reasons for requiring a warrant for safety code enforcement inspections. These concerns, however, are either met by our statute or appear to be inapplicable to the instant situation. The Court stated:

> Under the present system, when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization. 387 U.S. at 532, 87 S.Ct. at 1732, 18 L.Ed.2d at 937.

Owners of commercial premises are chargeable with knowledge of the statutes. Therefore, they should be aware that the OSHA law requires inspection of the premises. They also should be aware of the permissible limits of the inspection, as these are carefully set forth in the statute. The problem of unauthorized entry seems minimal. The inspector is required to present appropriate credentials and criminal penalties are provided for unauthorized notice of inspection.[5] If inspections are attempted in a manner which harasses the owner, he need merely refuse entrance to his premises and require a court order. He would thus have an opportunity to air his contentions regarding improper inspection.

This case, however, is not for our independent resolution. Unless the Supreme Court should decide to modify its decision in *See*, I feel compelled to concur in the decision requiring a warrant.

---

4. The United States Supreme Court has also recognized a paramount right of privacy with reference to activities within the home and values associated with the home. *See Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

5. AS 18.60.085.